IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HAYWARD GEORGE SLATER JR., §
§
Petitioner, §
§
v. § Civil Action No. 4:15-CV-979-O
§
LORIE DAVIS, Director, §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
§
Respondent. §

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Hayward George Slater Jr., a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

Petitioner was charged with shooting and murdering Prem Sharma, a Shell station clerk, in the course of committing or attempting to commit robbery in Tarrant County, Texas, Case No. 1202116D. Adm. R., Clerk's R. 305, ECF No. 31-26. The state waived the death penalty, and, on August 11, 2011, a jury found Petitioner guilty and the trial court assessed an automatic life sentence without parole. *Id.* at 306.

The evidence at trial was summarized by the state appellate court as follows:

> Slater entered a Shell station located in Arlington, Texas, at roughly 10:00 p.m. on May 29, 2010. Slater asked the attendant, Prem Sharma, who was mopping the floor, to be allowed to purchase cigarettes. As Sharma stepped behind the counter, Slater lifted his shirt, exposing a .44 caliber pistol that was tucked in his

waistband. As Sharma turned to Slater, Slater pulled the pistol from his waistband and pointed it at Sharma. While it is not known what Slater said to Sharma, it is not disputed that Slater intended to rob Sharma.

Sharma reacted by retrieving a "pricing gun" and pointing it at Slater. Slater continued to point the .44 at Sharma, and as Sharma backed away, Slater, who at this point was only feet from Sharma, shot him in the chest. Sharma quickly died from the gunshot wound. This encounter was captured on the Shell station's surveillance camera.

The next day, Arlington police ran a media release, offering a reward of $10,000 for information regarding the shooting. Multiple witnesses came forward, including Slater's sister, to identify Slater as the assailant. The police later arrested Slater. Slater confessed to shooting Sharma. During the investigation, Slater also confessed to his sister via a surreptitiously recorded phone conversation.

At trial, both of these recordings, as well as the video from the surveillance camera, were played for the jury. Slater did not dispute that he shot Sharma; rather, Slater's defense was that he never intended to shoot Sharma. Specifically, Slater's defense was that he lacked the "conscious objective and desire" to cause Sharma's death. The jury charge included the greater offense of capital murder, but it also included the lesser-included offenses of murder and aggravated robbery.

*Id.,* Mem. Op. 331-32, ECF No. 31-27

## II. ISSUES

In six grounds, Petitioner raises the following claims for relief:

(1)  The trial court failed to give Petitioner a hearing outside the presence of the jury concerning the secretly recorded phone conversation between him and his sister;

(2)  The trial court failed to remove a biased juror who was selected to the jury and allowed the biased juror to contaminate prospective jurors with contemptuous statements that encouraged the death penalty;

(3)  The trial court omitted a mandated portion of the reasonable-doubt jury instruction;

(4)  The state prosecutor suppressed and withheld a psychologist's evaluation report;

(5)  He received ineffective assistance of appellate counsel by counsel's failure to raise an obvious and significant issue, a "dead Bang winner," on appeal; and

(6) The trial court failed to charge the jury with all the *Miranda* rights.

Pet. 6-7, ECF No. 1; Suppl. Doc. 6, ECF No. 6.[1]

## III. RULE 5 STATEMENT

Respondent does not assert the petition is barred by the statute of limitations, successiveness, or a lack of exhaustion. Resp't's Ans. 6, ECF No. 21.

## IV. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This

---

[1]Petitioner refers the Court to his original memorandum of law, file-marked on December 28, 2015, "for narration and facts that will support" the grounds raised in his original petition. Mem., ECF No. 2. He also raises additional grounds in the memorandum (grounds five through nine). *Id.* at 44-45 (the pagination in the ECF header is used). Although the additional grounds may have been inadvertently included in the memorandum by Petitioner prior to filing, the memorandum was stricken from the record in this case because it exceeded the page limitation for briefs under Local Rule 7.2(c) and was returned to Petitioner. Order, ECF No. 5. Thus, any grounds for relief, facts, and/or legal argument set forth therein are not properly before the Court and cannot be considered. Presumably, that explains Respondent's failure to address those grounds. Pet'r's Reply 7, ECF No. 26.

presumption applies to both express and implied findings of fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Harrington*, 562 U.S. at 99; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004).

**B. Trial Court Error**

Under his first ground, Petitioner claims the trial court failed to give him a hearing outside the presence of the jury regarding the "secretly recorded" telephone conversation between him and his sister Joyce Jones. Pet. 6, ECF No. 1. This claim is rebutted by the record, which clearly demonstrates that a hearing outside the presence of the jury was, in fact, held on the matter. Adm. R., Reporter's R., vol. 6, 170-76. Further, Petitioner claimed in his state habeas application that unbeknownst to him his sister was working as an informant for the Arlington police department and she failed to give him his Miranda warnings. Adm. R., State Habeas R. 8, ECF No. 31-22. An intercepted oral communication does not violate state or federal law if one of the parties to the communication consents to the interception. *See* 18 U.S.C. § 2511(2)(c); TEX. PENAL CODE ANN. § 16.02(c)(3)(A) (West Supp. 2014); TEX. CODE CRIM. PROC. ANN. art. 18.20 (West 2015); *United*

4

*States v. Ransom,* 515 F.2d 885, 890 (5th Cir. 1975). *Accord United States v. White,* 401 U.S. 745, 751-52 (1971) (holding conversations between a defendant and an undercover agent may be taped by the agent without the defendant's knowledge; the tape and the agent's testimony are admissible). This case does not present a situation where police were "tapping" the phone and secretly recording without the knowledge or permission of any party to the conversation. Because Petitioner's sister consented to the recording, it was legally obtained and the trial court did not abuse its discretion in admitting it into evidence. The fact that it was made at the direction and/or with the assistance of law enforcement officers is immaterial. Further, because Petitioner was not in custody at the time of the conversation, nor was he being interrogated, the call cannot be classified as a custodial interrogation requiring the Miranda warnings. *See Miranda v. Arizona,* 384 U.S. 436, 469-70 (1966); *United States v. Marks,* 603 F.2d 582, 584 (5th Cir. 1979).

Under his second ground, Petitioner claims that the trial court failed to remove a biased juror who was seated on the jury and allowed that juror to contaminate other prospective jurors with "contemptuous statements that encouraged the death penalty." Pet. 6, ECF No. 1. The Supreme Court has clearly established a defendant's Sixth Amendment right to trial by a fair and impartial jury. *See Irvin v. Dowd,* 366 U.S. 717, 722 (1961). Petitioner has not, however, cited any Supreme Court precedent establishing that state trial courts have a duty to *sua sponte* dismiss a purportedly biased juror when no party objects. *See Washington v. Thaler,* 714 F.3d 352, 354 (5th Cir.), *cert. denied,* 134 S. Ct. 426 (2013); *Cage v. McCaughtry,* 305 F.3d 625, 626 (7th Cir. 2002); *Delrio v. State,* 840 S.W.2d 443, 445-46 (Tex. Crim. App. 1992). Furthermore, in his state habeas application, Petitioner complained of veniremen Owens and Stover. Adm. R., State Habeas R. 9, ECF No. 31-22. Stover was excused from further service by agreement of the parties immediately following the

state's voir-dire questioning and did not serve on the jury. Owens, who did serve on the jury, expressed that he believed that persons committing robbery would take one's life and money; that he would fight for his life and defend himself if robbed; and that police "need help these days" and are not getting the help that they need. Adm. R., Reporter's R., vol. 5, 64, ECF No. 31-8. The bias determination centers on a juror's own indication that he has "such fixed opinions that he could not judge impartially" a defendant's guilt and whether his views would "prevent or substantially impair the performance" of his duties as a juror in accordance with his instructions and oath. *Patton v. Yount,* 467 U.S. 1035 (1984); *United States v. Scott,* 159 F.3d 916, 925-26 (5th Cir. 1998). Owens never explicitly stated that he could not be fair or impartial or that his views would impair his ability to follow the trial court's instructions or his oath as a juror.

Under his third ground, Petitioner claims the trial court omitted a mandated portion of the reasonable-doubt instruction in the jury charge. Pet. 7, ECF No. 1. This claim raises only an alleged state-law violation, which provides no basis for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991). *See also Victor v. Nebraska,* 511 U.S. 1, 5 (1994) (providing "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course"). Further, in his state habeas memorandum, Petitioner cites to *Geesa v. State,* 820 S.W.2d 154 (Tex. Crim. App. 1991), and *Reyes v. State,* 938 S.W.2d 718 (Tex. Crim. App. 1996), for support, however, in *Paulson v. State,* 28 S.W.3d 570, 570 (Tex. Crim. App. 2000), the Texas Court of Criminal Appeals overruled *Reyes* in its entirety and *Geesa* to the extent it required an instruction on the definition of reasonable doubt. Adm. R., State Habeas R. 74-77, ECF No. 31-23.

Under his sixth ground, Petitioner claims that "the trial court failed to charge the jury with all the Miranda rights" as to confessions and admissions. Suppl. Doc. 6, ECF No. 6. Specifically,

he complains that the jury charge omitted the warning that during custodial interrogation an accused has the right to have a lawyer <u>present</u> to advise him prior to and during any questioning. The record reflects that the jury charge in this case included an instruction that prior to making an oral statement an accused must be warned, among other things, that "he is entitled to the services of an attorney, his own or, if he is unable to employ one, a court-appointed attorney, to advise him prior to and during any questioning or interrogation." Adm. R., Clerk's R., vol. 2, 396-97, ECF No. 31-3. Therefore, the record arguably refutes this claim. Furthermore, improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991). The relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). There is a strong presumption that errors in jury instructions are subject to harmless-error analysis. Thus, even if the instruction was erroneous, if the error is harmless, habeas-corpus relief is not warranted. *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993). In a habeas proceeding, a constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* Petitioner has not shown that the omission of an instruction that Petitioner had the right to have an attorney <u>present</u> during questioning was erroneous or that the omission had a substantial and injurious effect or influence in determining the jury's verdict. Adm. R., Reporter's R., vol. 9, State's Ex. 3, ECF No. 31-12.

  **C. *Brady* Violation**

  Under his fourth ground, Petitioner claims the state prosecutor suppressed and withheld the results of a 14-hour psychological evaluation. Pet. 7, ECF No. 1. In his state habeas memorandum, Petitioner argued that the state knew he was "mentally instable [sic] and that his IQ is at a Moronic

7

level" and that had this information been disclosed the outcome of his trial may have been different. Adm. R., State Habeas R. 82, ECF No. 31-23. To establish a *Brady* violation, a petitioner must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material. *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id*. at 451. The record reflects that the trial court ordered MHMR of Tarrant County to perform a psychological evaluation on Petitioner and that defense counsel retained neuropsychologist Dr. Michael Chafetz to perform a neuropsychological evaluation on him. *Id.* at 196, ECF No. 31-24; Clerk's R. 19, ECF No. 31-2. The defense received a copy of Dr. Chafetz's evaluation report; thus, the Court is left to assume that Petitioner refers to the evaluation report prepared by the MHMR expert, if indeed one exists, which he asserts was sealed by the trial court and remains sealed. A copy of the evaluation report is not before the Court, however the trial court's action indicates that it found, albeit implicitly, no *Brady* material in the sealed report. *See United States v. Skilling,* 554 F.3d 529, 579 (5th Cir. 2009), *vacated in part on other grounds by Skilling v. United States,* 561 U.S. 358 (2010); *United States v. Lampazianie,* 251 F.3d 519, 526 (5th Cir. 2001) (suggesting that a district court's evaluation of sealed evidence coupled with a later decision that the evidence remain sealed raised a "reasonable inference that the district court . . . found nothing exculpatory in the relevant documents"). Petitioner's conclusory allegations that the evaluation report was withheld and was favorable to the defense, alone, are insufficient to raise a constitutional issue. *See Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir. 1990).

    **D. Ineffective Assistance of Appellate Counsel**

In his final ground, Petitioner claims his appellate counsel was ineffective by failing to raise a "dead Bang winner" on appeal. Suppl. Doc. 6, ECF No. 6. In his state habeas memorandum, Petitioner argued that appellate counsel should have raised a claim that the trial court erred in refusing to charge the jury on the defensive issues of necessity and self-defense. Adm. R., State Habeas R. 118-21, ECF No. 31-23. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. The Supreme Court recently emphasized in *Harrington v. Richter* that—

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different.

9

For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000) (emphasis in original)). Accordingly, it is necessary only to determine whether the state courts' adjudication of Petitioner's ineffective assistance claim is contrary to or an objectively unreasonable application of *Strickland*. *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

In the state habeas proceeding, appellate counsel, who is board certified in criminal appellate practice, responded to Petitioner's allegation by affidavit as follows:

> This claim is without merit for several reasons. First of all, it is critical to this claim and clear from the record that Applicant exhibited a firearm to the victim, Prem Sharma, in the course of robbing Mr. Sharma, **before** Mr. Sharma raised the "pricing gun."
>
> Slater entered a Shell station located in Arlington, Texas, at roughly 10:00 p.m. on May 29, 2010. Slater asked the attendant, Prem Sharma, who was mopping the floor, to be allowed to purchase cigarettes. As Sharma stepped behind the counter, Slater lifted his shirt, exposing a .44 caliber pistol that was tucked in his waistband. As Sharma turned to Slater, Slater pulled the pistol from his waistband and pointed it at Sharma. While it is not known what Slater said to Sharma, it is not disputed that Slater intended to rob Sharma.
>
> Sharma reacted by retrieving a "pricing gun" and pointing it at Slater. Slater continued to point the .44 at Sharma, and as Sharma backed away, Slater, who at this point was only feet from Sharma, shot him in the chest. Sharma quickly died from the gunshot wound.
>
> Included in the record below was Applicant's confession to law enforcement. In his recorded statement, Applicant had a short conversation with Mr. Sharma, and then raised his shirt, revealing a .44 magnum caliber pistol that he had tucked into his waistband. Applicant demanded that Mr. Sharma give him money, and when Mr. Sharma did not immediately comply, Applicant pulled out the gun and pointed it at Mr. Sharma's chest. Mr. Sharma reached for the pricing gun, and Applicant shot him.

In his application, and also at Applicant's designated "Exhibit A, . . .: cross examination of Detective Lopez," Applicant further buttresses the sequence of events -- established in the record -- that preceded the shooting. His trial counsel's cross-examination of Detective Lopez regarding the recorded phone conversation between Applicant and his sister included the following:

[MR. MOORE]: Talked about that – that he pulled – he was already displaying his gun. Told his sister that, didn't he"
[DETECTIVE LOPEZ]: Yes.
[MR. MOORE]: And that's corroborated with the videotape, isn't it?
[DETECTIVE LOPEZ]: Well, it's corroborated that he had something in his hand, yes. Not that he had a gun.
[MR. MOORE]: I'm talking about Hayward, Hayward told his sister –
[DETECTIVE LOPEZ]: Yes.
[MR. MOORE]: -- he was displaying a gun.
[DETECTIVE LOPEZ]: Yes I understand your question. Yes.
[MR. MOORE]: And that's true, isn't it?
[DETECTIVE LOPEZ]: Yes.
[MR. MOORE]: And then he said the man pulled – pulled a gun. That's – That's corroborated isn't it?
[DETECTIVE LOPEZ]: Yes, Yes. That the man pulled something, yes.

**Necessity:** Texas Penal Code 9.22 provides that conduct may be justified if the actor reasonably believed the conduct is immediately necessary to avoid imminent harm. However, "[I]t is the law of this state that a person who is responsible for having placed himself in the position from which he attempts to extricate himself by committing a criminal offense is not entitled to a charge authorizing his acquittal of that offense based upon necessity."

The same holding is found in *Leach v. State,* . . . . "[W]e hold that one who provokes the difficulty, or is responsible for having placed himself in the position from which he attempts to extricate himself by committing a criminal offense based upon necessity."

In addition, to establish the second element of the necessity defense, evidence in the record must show that "the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." The obvious intent of section 9.22(2) is to "facilitate the desired balancing of harms on a case-by-case basis."

In *Rios v. State,* . . ., the appellant tried to justify possessing a deadly weapon in prison because he had been attacked and threatened repeatedly and needed protection. Regarding the second element of necessity, the Tyler Court noted that the legislature by banning weapons in prison, intended to protect all inmates and prison

employees. The Court held that the appellant did not show how his own safety clearly outweighed that of the other inmates and employees. In *Staples v. State, . . .*, the appellant went to the victim's home to retrieve a lawnmower the victim had not fully paid for. Appellant obtained a handgun before going to the residence. When appellant was loading the mower the victim came out of his home with a loaded handgun. The two men opened fire on one another. Applicant was tried for murder. In writing on the balancing of the harm, the Court of Appeals observed that "there must be evidence that the harm the defendant sought to avoid was greater than the harm caused by his conduct." "When the evidence at trial raises the first element of the necessity defense, but fails to raise the second, the trial court *does not error in denying a defendant's claim to the defense."* In carefully reviewing the record for any evidence to support a rational jury finding that the harm appellant avoided clearly outweighed the harm he inflicted, the Court noted as follow: "Appellant suggests no reason on appeal why his own death would have been a greater harm than [victim's], and we find no evidence in the record to support such a conclusion."

Appellant fails to show how this record suggests, much less contains evidence, to state why an appellate court would have held that a rational juror would find that on balance the harm in Slater's death would clearly outweigh the harm caused by Mr. Sharma's death.

In addition an appellate point on necessity would have failed because in order to raise necessity a defendant must admit violating the statute under which he is charged and then offer necessity as a justification. The Texas Court of Criminal Appeals has stated with respect to defenses such as necessity and self defense that a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes justification to excuse otherwise criminal conduct.

As Applicant put it, he "emphasized during the interrogation that it was not his intention to kill the man. . . ." The trial record is clear that Applicant's defense was primarily centered on his lack of intent to murder.

**Deadly Force in Defense of Person (Self-Defense):** A defense in supported by the evidence if there is evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true. Undersigned Counsel determined that for various reasons a point of error regarding deadly force in defense of person instruction would be without merit.

Under Texas Penal Code 9.32, Applicant would have been justified in using deadly force against Mr. Sharma, only if, first of all, he could show that he was first justified in using force per Texas Penal Code 9.31. Pursuant to Texas Penal Code 9.31(b)(4), the use of force against another is not justified if the actor provoked the

other's use or attempted use of unlawful force, unless the actor abandons the encounter, or clearly communicates his intent to do so reasonably believing he cannot safely abandon the encounter; and the other, nevertheless, continues or attempts to use unlawful force. Under 9.32(2)(A) the actor must reasonably believe the deadly force is immediately necessary to protect against the other's use or attempted use of *unlawful* deadly force. First of all, from the record Undersigned Counsel developed his own legal opinion that if self-defense were raised, the appellate court would determine that Mr. Slater *provoked* Mr. Sharma. Also, Undersigned Counsel did not believe an appellate court would find that Mr. Sharma was attempting to use "unlawful" deadly force, when he was merely attempting to bluff Applicant with a pricing gun. Under Texas Penal Code 9.3(e), if the actor provoked the person against whom force was used–both of which would apply to Applicant's case–the actor would be required to retreat if a reasonable person in the actor's situation would have retreated. Even if the record supported a self-defense instruction, it would nevertheless fail from this record, which would not support that Applicant did not have a duty to retreat.

      In *Banda v. State,* . . ., the appellant was convicted of aggravated assault with a deadly weapon. On appeal he complained that the trial court failed to submit the self-defense instruction. The record showed that appellant ran with a sickle in his hand toward the victim. The victim picked up an extension bar. The victim told the appellant if he came any closer he would strike him with the extension bar, and he did ultimately strike the appellant with the extension bar. The Court of Appeals noted "appellant threatened [victim] with deadly force at a time when he was under no threat of violence from [victim]. No reasonable person would have believed that deadly force was immediately necessary to protect himself from [victim] at the time appellant ran to Adams's trailer, carrying the sickle."

      Likewise, Applicant carried with him and displayed a loaded gun in the store, and there is no basis to conclude the appellate court would have found that a rational juror would believe that, at the time he entered the store, the Applicant reasonably believed deadly force was immediately necessary to protect himself.

Adm. R., State Habeas R. 222-28, ECF No. 31-26 (citations omitted) (emphasis in original).

The state habeas judge, who also presided over Petitioner's trial, entered factual findings consistent with counsel's affidavit and, applying the *Strickland* standard, concluded that counsel's decision not to raise the issues was the result of reasonable appellate strategy and that Petitioner failed to satisfy either prong of the standard because such issues would have been frivolous. *Id.* at 279-80, 287-90. Appellate counsel is not required to raise every conceivable argument urged by his

client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). The state courts' adjudication of the claim is a reasonable application of *Strickland.*

In summary, Petitioner fails to demonstrate that the state courts' determination of the issues properly raised in state court is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or is based on an unreasonable determination of the facts in light of the record before the state courts. 28 U.S.C. § 2254(d)(1)–(2)

## V. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 11th day of October, 2017.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE